# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAMALJIT SINGH HUNDAL, | 1:03-CV-6900 LJO HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | [Doc. #1] |
| KATHY PROSPER, Warden, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, by order dated May 2, 2004, this case was reassigned to the undersigned for all further proceedings. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated October 18, 2004, this case was assigned to the undersigned for all purposes, including entry of final judgment.

**PROCEDURAL BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, following his conviction by jury

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

trial on January 24, 2001, of spousal rape, spousal abuse, forcible sodomy, attempted spousal rape, malicious destruction of a telephone line, and false imprisonment. (Cal. Penal Code §§ 262(a)(1), 286(c)(2), 273.5, 664, 262(a), 236, and 591). See Exhibit D, Respondent's Answer to the Petition (hereinafter "Answer"). Petitioner was sentenced to serve a total term of fifteen years in state prison. Id.

Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth Appellate District (hereinafter "5th DCA"). On September 6, 2002, the 5th DCA issued an unpublished opinion affirming the judgment. Id.

Petitioner filed a petition for review in the California Supreme Court on October 17, 2002. See Exhibit E, Answer. On November 26, 2002, the petition was summarily denied. See Exhibit F, Answer.

On December 15, 2003, Petitioner filed the instant federal habeas petition in the United States District Court for the Eastern District of California, Sacramento Division. By order of the Court dated December 22, 2003, the case was transferred to the Fresno Division. Petitioner raises four grounds for relief: 1) Petitioner claims the prosecutor committed misconduct by appealing to religious and cultural bias during trial; 2) Petitioner claims he was denied due process and a full and fair trial by jury when the trial court used a jury instruction defining consent as "positive cooperation"; 3) Petitioner alleges he was denied the full opportunity to present his defense of a good faith belief in consent based on prior consensual activities within the marriage; and 4) Petitioner contends the terms for Counts Three and Four (false imprisonment and telephone line disabling) should have been stayed pursuant to Cal. Penal Code § 654.

On May 25, 2004, Respondent filed an answer to the petition. Respondent concedes that Petitioner has exhausted his state remedies. Petitioner did not file a traverse.

**FACTUAL BACKGROUND**

The Court hereby adopts the facts as summarized by the 5th DCA in its opinion dated September 6, 2002:

> [Petitioner] married the victim pursuant to an arrangement by their parents. After their marriage [Petitioner] did not permit his wife to be involved in the family finances. Sexual relations were consensual "[m]ost of the time" at the beginning of their marriage. Their

marital relations changed, however, when the victim was four months pregnant with their first child. [Petitioner] became verbally abusive and frequently forced the victim to have sex despite her objections. She separated from [Petitioner] on a few occasions, moving back into her parents' home. When she moved back in with him, however, [Petitioner] continued his violent behavior. He pushed, wrestled, threw, and strangled her in order to have sex, ignoring her pleas to stop. [Petitioner] was most often violent when he had been drinking.

On the evening of July 3, 2000, [Petitioner] drank before he and the victim went to bed. Once in bed, [Petitioner] removed his underwear and cuddled up to the victim. She told [Petitioner] she did not want to have sex. [Petitioner] pinned the victim to the bed and removed her sweat pants and underpants. The victim continued to object to [Petitioner's] actions. At times, [Petitioner] held a pillow over her face or covered her mouth with his hand. [Petitioner] turned the victim onto her stomach, twisted her arm so that she could not move, and inserted his penis into her anus. She told [Petitioner] that this was painful and told him to stop, but he ignored her. The couple's two-year-old daughter entered the room during this intercourse. [Petitioner] continued and eventually ejaculated on the victim's buttocks.

[Petitioner] left the room and returned shortly thereafter with a can of beer. The victim held her child while [Petitioner] was gone. When [Petitioner] returned, he quickly grabbed the victim's ankles and began to have vaginal sexual intercourse with her. The victim released the child, told [Petitioner] to stop because it hurt and because their daughter was still in the room, sitting on the bed. [Petitioner] continued, heedless. The victim was left with bruises on her arms and legs, scratches, and chafes. Photographs of these wounds were admitted into evidence. The victim did not report the incident to the police because she was scared.

On the evening of July 10, the victim put the children to bed and went to bed herself at 9:30 or 10:00 p.m., wearing the same pair of sweat pants and T-shirt as on July 3. [Petitioner] was already in bed. The victim told [Petitioner] before she got into bed that she did not want to have sex because she was still bruised and sore from the July 3 incident. When she got into bed, [Petitioner] began to cuddle up to the victim and she reiterated that she did not want to have sex. He ignored the victim's statements and tried to remove her clothes. She tried to keep [Petitioner] from removing her clothes, and the two struggled on the bed. [Petitioner] held the victim down by her biceps, then put his leg on her stomach and removed her pants. He then tried to insert his penis in her vagina.

The victim was eventually able to push [Petitioner] off of her, then jumped out of bed and turned on the light. [Petitioner] got out of bed and tried to push her back onto the bed. The victim told [Petitioner] she wanted to call her parents or the police and leave the house. [Petitioner] replied that she could leave the next morning and blocked the bedroom doorway with his arms so that she could not leave the room. The victim shouted, hoping that the neighbors would come and help her escape. Nobody came, so she eventually stopped yelling.

[Petitioner] moved from the doorway after approximately five minutes. The victim ran into the kitchen and grabbed the telephone to call the police. [Petitioner] followed her and pulled the telephone cord from the wall. He then took the car keys and returned to the bedroom, lying in front of the other telephone, preventing the victim from reaching it. After [Petitioner] again pursued the victim to the kitchen, she broke free, grabbed her clothes and went to the neighbor's house to call the police from their telephone. The neighbors, however, did not answer the door. The victim returned to her house, got the children out of bed, and called her parents. She suffered additional scratches and a ripped shirt from this incident. The victim reported this incident to police soon after leaving the house.

[Petitioner] testified on his own behalf. He denied ever forcing his wife to have sex. [Petitioner] claimed that he and the victim engaged in consensual anal sex on a regular basis.

> The victim left [Petitioner] for a period in 1994, but she returned to the relationship. She again left [Petitioner] in 1998, then returned in October 1999.
>
> [Petitioner] did not recall anything unusual happening on July 3, 2000. On July 10, the victim told him when they went to bed that she did not feel like having sex. He replied that this was fine with him. [Petitioner] denied trying to have sex with the victim that evening. The couple fought that evening, however, because the victim was unhappy that [Petitioner] was unemployed. She said she was going to leave him, but he tried to calm her down. The victim's shirt ripped and her arm was scratched when she pulled away from [Petitioner] while he was holding her shirt.
>
> [Petitioner] admitted he took the car keys so the victim could not leave. He testified that he offered to call her mother for her. The victim said, however, that she would make the call herself. She then called the police. [Petitioner] denied ever having threatened or hit the victim.
>
> In rebuttal, the victim's mother testified that she saw [Petitioner] hit her daughter in the mouth, causing her lip to bleed. This occurred after he had been drinking. The victim testified that [Petitioner] once pointed a shotgun at her and threatened to shoot her. He also kicked her once while she was pregnant. [Petitioner] admitted he owned a rifle but claimed he never pointed it at her. He also testified that he never kicked the victim.

See pp. 3-5, Exhibit D, Answer.

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Merced County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II. Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

### III.  Review of Petitioner's Claims

#### A.  Ground One

In his first ground for relief, Petitioner claims the prosecutor committed misconduct by inflaming the jury's bias against Petitioner by arguing his actions were the result of his cultural and religious background.

1.  Factual Background[2]

> During the case-in-chief, the prosecutor elicited testimony from the victim regarding the history and nature of her relationship with [Petitioner]. She testified that the couple's families had arranged their marriage before they had met, and that she had not loved [Petitioner] when they married. She also testified that [Petitioner] told her the family finances were not her business.
>
> The victim married [Petitioner] because of pressure from her family. After the marriage, she did not have any friends other than [Petitioner's] friends. During the relationship, [Petitioner] physically forced the victim to have sex more often than occurred with her consent. She told [Petitioner] when she did not want to have sex. The couple had

---

[2] These facts are quoted from the factual summary in the opinion of the 5th DCA. See pp. 5-7, Exhibit D, Answer.

sexual intercourse usually at least once a day. He would comply with her desire not to have sex approximately twice per week.

The victim left [Petitioner] for the first time in 1994 when he physically attacked her in front of her brother. The victim's brother grabbed her and her son and took them to their parents' home to protect her from [Petitioner]. The victim returned to [Petitioner] under pressure from her mother. When she returned, [Petitioner] was more sexually aggressive and forceful.

[Petitioner] testified in his native Punjabi language with the use of an interpreter. He lived in India from his birth in 1967 until 1984. He did not move permanently to the United States until 1989. The victim was in love with someone else at the time of her marriage to [Petitioner].

During [Petitioner's] cross-examination, the following colloquy occurred:

[PROSECUTION]: Isn't it true that the Indian culture is a very controlling culture?

[DEFENSE]: Objection. This is argumentative. It's also lacking foundation.

THE COURT: Overruled.

THE WITNESS: I don't understand what you mean.

[PROSECUTION]: With respect to generally how men treat women in the Indian culture, isn't it true men control women?

[The Court upheld defense counsel's objection on the grounds of insufficient foundation.]

[PROSECUTION]: You were an adult living in India, weren't you?

A. Yes.

Q. Isn't there a cast[e] system where people of the Indian – in the Indian culture have different rank?

A. Yes.

Q. – or different status?

A. Yes.

Q. And isn't it true that men have a higher status than women?

A. I don't know that. [¶]. . .

Q. This was an arranged marriage?

A. Yes.

Q. Didn't you think of her as an object?

[DEFENSE]: Objections. Argumentative.

THE COURT: As phrased. Sustained.

Later, the prosecutor argued to the jury,

> . . . That is felony false imprisonment. Ladies and Gentlemen, you're dealing with the Indian culture here. There is a cast[e] system. [¶] . . . [¶] . . . [Defense objection to discussion of facts not in evidence is overruled.] [¶] . . . Men have a higher status than women. This Defendant views his wife as property. [¶] . . . [¶] . . .[Upon defense counsel's objection to facts not in evidence, the court asked the prosecutor to rephrase her last comment.] [¶] . . . This Defendant's actions in this case and on July 3rd and on July 10th showed you that he viewed [his wife] as his property, his property that he can have sex with whenever he wants and however he wants. [¶] Ladies and Gentlemen, that is not accepted in our society. You send a message to him that it's not accepted, you cannot accept it, and you will not accept it. Hold him responsible. . . .

2. Clearly Established Supreme Court Law

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987), *quoting* United States v. Bagley, 473 U.S. 667 (1985).  Any claim of prosecutorial misconduct must be reviewed within the context of the entire trial. Id. at 765-66; United States v. Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1994).  The court must keep in mind that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." Smith v. Phillips, 455 U.S. 209, 219 (1982). "Improper argument does not, per se, violate a defendant's constitutional rights." Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996), *quoting* Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir.1993). If prosecutorial misconduct is established, and it was constitutional error, the error must be evaluated pursuant to the harmless error test set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Thompson, 74 F.3d at 1577 ("Only if the argument were constitutional error would we have to decide whether the constitutional error was harmless.").

3. Review of Claim by State Courts

This claim was first presented on direct appeal to the 5th DCA. The 5th DCA denied the claim on September 6, 2002, in a reasoned opinion. See Exhibit D, Answer.  The claim was then presented

to the California Supreme Court in a petition for review; however, the petition was summarily denied on November 26, 2002. See Exhibit F, Answer. The California Supreme Court, by its "silent order" denying review of the 5th DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the 5th DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In reviewing Petitioner's claim, the 5th DCA first found the evidence of Petitioner's religious and cultural practice to be relevant as "to why the victim would have stayed in and returned to a controlling and abusive relationship." See p. 8, Exhibit D, Answer. The evidence was also relevant to "explain why [the victim] was willing to marry a man chosen by her parents and to stay with him despite the history of physical and sexual abuse. Without this context, the jury would likely have doubted the credibility of her account." Id. Although the 5th DCA found the admitted cultural evidence to be constitutional, it determined the prosecutor's remarks were arguably improper in violation of Petitioner's federal rights to due process and equal protection of the law. Specifically, the 5th DCA found the prosecutor's argument that "'you're dealing with the Indian culture here. There is a cast[e] system' and 'Men have a higher status than women,' threatened to inflame the jury to improperly overgeneralize that Petitioner must have behaved according to the prosecutor's view of Indian or Sikh behavior, i.e., that the men control their wives." Id. at 10.

Nevertheless, the appellate court correctly applied the harmless error test and found the error harmless beyond a reasonable doubt. The court noted that the evidence itself was properly admitted, and the only impropriety arose during the prosecutor's closing remarks. The questionable remarks were very brief, and after the remarks were made, the prosecutor returned to a proper line of analysis: Petitioner's "personal beliefs and actions." Id. at 12. In addition, defense counsel objected to the remarks and the trial court instructed the prosecutor to rephrase her argument, "implicitly instructing the jury that [the prosecutor's] previous approach was improper." Id. Given these circumstances, and in light of the great weight of evidence against Petitioner, the appellate court found the improper argument to be harmless beyond a reasonable doubt, even without a remedial instruction by the trial court. Id.

U.S. District Court
E. D. California

cd

9

1  <u>4. Analysis</u>

2  The state court's denial of Petitioner's claim is consistent with Supreme Court precedent. As
3  fully discussed by the appellate court, the evidence itself was properly admitted. Petitioner's cultural
4  and religious background were relevant to explain the couple's relationship. The specific remarks by
5  the prosecutor during closing, however, were improper. Nevertheless, the 5th DCA's determination
6  that the remarks were harmless beyond a reasonable doubt was neither contrary to, or an
7  unreasonable application of, clearly established Supreme Court precedent. The prosecutor's remarks
8  were very brief, and the trial court instructed the prosecutor to rephrase her argument. Thus, the jury
9  was implicitly informed that the prosecutor's approach was improper. Thereafter, the prosecutor
10 corrected her line of argument by arguing to the jury that Petitioner viewed his wife as an object of
11 property. Petitioner's cultural and religious background were relevant to Petitioner's motivation in
12 committing the crimes. Furthermore, in light of the sheer weight of the evidence against Petitioner,
13 the improper argument by the prosecutor could not have had an impact on the outcome of the trial.
14 Thus, the claim must be denied.

15 **B.  Ground Two**

16 The jury was instructed with CALJIC No. 1.23.1, as follows:

17 > In prosecutions for rape, attempted rape and sodomy, the word 'consent' means positive cooperation in an act or attitude as an exercise of free will. The person must act
18 > freely and voluntarily and have knowledge of the nature of the act or transaction involved.

19 Petitioner alleges the instruction which defined consent as "positive cooperation" violated his due
20 process rights by decreasing the prosecutor's burden of proof of an element of the crime. Petitioner
21 argues that the instruction allowed him to be convicted based upon mere neutrality or ambiguity in
22 participation in a sex act.

23 <u>1. Clearly Established Supreme Court Law</u>

24 As a preliminary matter, the court notes that an allegation that a jury instruction is incorrect
25 under state law does not form a basis for federal habeas corpus relief. <u>Estelle v. McGuire</u>, 502 U.S.
26 62, 67, 112 S.Ct. 475 (1991) ("We have stated many times that federal habeas corpus relief does not
27 lie for errors of state law."). To obtain federal collateral relief for errors in the jury charge, a
28 petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting

1 conviction violates due process. Id. at 72. Additionally, the instruction may not be judged in
2 artificial isolation, but must be considered in the context of the instructions as a whole and the trial
3 record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury
4 as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982),
5 *citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Furthermore, even if it is determined that the
6 instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the
7 unconstitutional instruction had a substantial influence on the conviction and thereby resulted in
8 actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether
9 the error had a substantial and injurious effect or influence in determining the jury's verdict.). See
10 Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an
11 erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional
12 validity of a state court's judgment is even greater than the showing required to establish plain error
13 on direct appeal." Id.

   2. Review by State Courts

15 This claim was also first presented on direct appeal to the 5th DCA, which denied it on
16 September 6, 2002, in a reasoned opinion. See Exhibit D, Answer. The claim was then presented to
17 the California Supreme Court in a petition for review, which was summarily denied on November
18 26, 2002. See Exhibit F, Answer. The California Supreme Court, by its "silent order" denying
19 review of the 5th DCA's decision, is presumed to have denied the claims presented for the same
20 reasons stated in the opinion of the 5th DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).
21 In rejecting Petitioner's claim, the 5th DCA found the instruction was correct under California
22 law. Citing to People v. Gonzalez, 33 Cal.App.4th 1440, 1443 (1995), the appellate court stated that
23 "jury instructions relating to forcible sex crimes clearly indicate that the prosecution has the burden
24 of proving the lack of consent." See p. 13, Exhibit D, Answer. Furthermore, the jury was instructed
25 that "rape and forcible sodomy must be executed 'by means of force, violence, duress, menace, or
26 fear of immediate and unlawful bodily injury.'" Id. Petitioner produced no evidence that the jury did
27 not follow these instructions, and juries are presumed to follow the court's instructions. In addition,
28 Petitioner failed to demonstrate a factual basis from which a reasonable jury could have found the

1 victim consented to sexual activity.

2     3. Analysis

3     The Court finds this claim to be without merit. First, the instant claim is based on
4 interpretation of state law, and generally, issues of state law are not cognizable on federal habeas.
5 Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus
6 relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990);
7 Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law,
8 one that does not rise to the level of a constitutional violation, may not be corrected on federal
9 habeas").

10     Moreover, the appellate court properly rejected the claim, because Petitioner failed to
11 demonstrate that the jury did not follow its instructions in finding Petitioner guilty of rape and
12 forcible sodomy. Petitioner makes no showing that the jury, in finding Petitioner guilty of rape and
13 forcible sodomy, did not conclude that he accomplished the crimes by force, violence, duress,
14 menace, or fear of immediate and unlawful bodily injury.

15     Thus, Petitioner has failed to demonstrate that the state court rejection of his claim was
16 contrary to, or an unreasonable application of, clearly established Federal law, as determined by the
17 Supreme Court of the United States, or a decision that was based on an unreasonable determination
18 of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be rejected.

19 **C. Ground Three**

20     Petitioner next alleges he was denied an opportunity to fully present his defense of a good
21 faith belief in consent based on prior sexual intercourse. The jury was instructed as follows:

22-25 > Evidence has been introduced for the purpose of showing that the defendant and his wife engaged consensually in sexual intercourse on one or more occasions prior to the charge against the defendant in his case. ¶ If you believe this evidence, you should consider it only for the limited purpose of tending to show that the defendant's wife consented to the act of intercourse charged in this case, or the defendant had a good faith reasonable belief that the defendant's wife consented to the act of sexual intercourse.

26 Petitioner argues that the jury understood the definition of "sexual intercourse" to include only
27 penile-vaginal intercourse, not penile-anal intercourse. He contends the instruction given was
28 constitutionally infirm because it created a negative implication that consensual anal intecourse

could not be considered as evidence that the charged sodomy was consensual.

### 1. Clearly Established Supreme Court Law

As discussed *supra*, an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief. Estelle, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v, Kibbe, 431 U.S. 145, 154 (1977). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht, 507 U.S. at 637 (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

### 2. Review by State Courts

This claim was also first presented on direct appeal to the 5th DCA, which denied it on September 6, 2002, in a reasoned opinion. See Exhibit D, Answer. The claim was then presented to the California Supreme Court in a petition for review; it was summarily denied on November 26, 2002. See Exhibit F, Answer. The California Supreme Court is presumed to have denied the claims presented for the same reasons stated in the opinion of the 5th DCA. Ylst, 501 U.S. at 803.

In rejecting Petitioner's claim, the appellate court first noted that it was defense counsel who requested the challenged instruction, and Petitioner could not now claim error after counsel had made this tactical decision at trial. People v. Macias, 16 Cal.4th 739, 746 n.3 (1997). See p. 14, Exhibit D, Answer. In addition, the appellate court stated that Petitioner had waived his right to

challenge the instruction because he failed to request an instruction during trial to pinpoint or clarify the issue to be considered by the jury. Id.

The appellate court also found Petitioner's claim to be without any merit. The court noted that the ordinary definition of the term "sexual intercourse" as defined in Webster's Dictionary is not limited to penetration of a vagina by a penis. Id. "It also includes 'genital contact between individuals other than penetration of the vagina by a penis.'" Id., *quoting* Webster's 3d New Internat. Dict. at 2082 (1986). Therefore, the terminology used in the instruction did not exclude Petitioner's defense.

Lastly, the appellate court concluded that the omission of a pinpoint instruction was harmless beyond a reasonable doubt, because the jurors could not have considered consent to be an issue in this case. The court noted that the jury was presented with "two diametrically opposing renditions of events: one in which violent rape took place, and another in which no unusual sexual relations occurred." See p. 15, Exhibit D, Answer. Because Petitioner was found guilty of rape and attempted rape, the jury could not have concluded that the victim consented to sexual relations on the relevant dates. Therefore, Petitioner could not have been prejudiced by the omission of a clarification instruction on whether "sexual intercourse" included anal intercourse.

3. Analysis

The state court rejection of this claim is consistent with Supreme Court precedent. As fully discussed by the appellate court, Petitioner's claim is without any factual or legal support. The ordinary definition of "sexual intercourse" includes anal intercourse, and in any event, the omission of a clarifying instruction could not have prejudiced Petitioner because the jury clearly rejected Petitioner's position that the victim had consented to *any* sexual intercourse on the relevant dates. The claim must be denied.

**D.  Ground Four**

In his last claim for relief, Petitioner alleges he was improperly sentenced pursuant to Cal. Penal Code § 654 to six-month terms for each of the convictions for false imprisonment and disabling a telephone line.

As correctly argued by Respondent, the claim fails to state a cognizable federal claim.

"We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" Estelle, 502 U.S. at 67 (1991), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Here, Petitioner challenges the state court's interpretation and application of state law. Therefore, the instant claim is not cognizable in federal habeas. See Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (holding a petitioner's argument that California court could not impose two sentences for a single act under Cal. Penal Code § 654 is not cognizable in a federal habeas action).

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED with prejudice; and

2) The Clerk of Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

**Dated:   June 12, 2006**                      /s/ Lawrence J. O'Neill
b9ed48                                          UNITED STATES MAGISTRATE JUDGE

U.S. District Court
E. D. California     cd                           15